**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1036-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

NAKEE W. KING,

    Defendant-Appellant.

_____

Submitted April 23, 2026 – Decided July 17, 2026

Before Judges Mawla and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 24-01-0106.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Alison Gifford, Assistant Deputy Public Defender, of counsel and on the brief).

Jennifer Davenport, Attorney General, attorney for respondent (Gabriella L. Korosec, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Following an unsuccessful motion to suppress evidence seized without a warrant, defendant Nakee W. King entered a negotiated guilty plea to third-degree manufacturing/distributing a controlled dangerous substance (CDS), N.J.S.A. 2C:35-5(a)(1) and (b)(5), and was sentenced in accordance with the plea agreement to two years' probation. He now appeals from a July 10, 2024 Law Division order denying his suppression motion. We affirm.

I.

The following facts are drawn from the testimony and body-worn camera (BWC) footage considered by the motion judge. On October 19, 2023, Camden County Police Officer Anthony Sortino was assigned to patrol the east Camden area. Around 9:45 p.m., Sortino observed a crowd of people gathered in the middle of the road for about thirty to forty minutes. One of the individuals, later identified as Curtis Walker, repeatedly engaged in brief interactions with cars that stopped in the street and then with defendant, who was holding a black plastic grocery bag. Officer Sortino testified:

> [Walker] was seen to be going in and out of traffic. Cars would periodically pull up. They would have a brief interaction. He would lean down, be inside of the car. He would [have] a couple-second interaction with whichever car it would be and then he would retreat back to [defendant] and . . . they were . . . in the middle of the crowd and [defendant] was still holding the bag at that time.

2

Officer Sortino radioed a Camden County sergeant to report his observations, and the sergeant ordered Sortino to assist him with a pedestrian stop of defendant and Walker. As the officers approached the crowd, it dispersed in different directions, with defendant and Walker proceeding down the street. As Officer Sortino followed them, he observed Walker "had his hands . . . tucked in his waistband," which, based on his training and experience, caused Sortino to believe Walker was armed.

Officer Sortino also observed defendant holding a black grocery bag and heard items "jingling around inside of it." The officer testified the sounds were consistent with plastic, drug-packaging materials, which he knew as "trash cans and cones," hitting one another. It was a sound Officer Sortino had heard "over a dozen" times before.

When the sergeant stopped Walker and patted him down, defendant fled on foot. As Sortino ran after him, another officer yelled at defendant to stop running, but he ignored the order. During the foot chase, Sortino observed defendant throw the black bag off to the side, where another officer immediately recovered it. Sortino continued to pursue defendant for several blocks until defendant tripped in the street and was apprehended. After defendant was handcuffed, Sortino retrieved the bag from the other officer and searched it,

3

revealing 219 vials of suspected crack cocaine. Officers also recovered $2,300 in cash on defendant's person.

A Camden County grand jury returned a five-count indictment against defendant, charging him with CDS offenses and resisting arrest. He moved to suppress the evidence seized, arguing the officers lacked reasonable suspicion to conduct an evidentiary stop. He also contended any claim of abandonment of the bag was inapplicable because the stop was unlawful.

In a comprehensive written opinion, the motion judge detailed the foregoing facts, discussed governing case law, and determined the totality of the circumstances supported the stop. Defendant now raises the following points for our consideration:

> BECAUSE THE INVESTIGATORY STOP VIOLATED [DEFENDANT]'S CONSTITUTIONAL RIGHTS, THE FRUITS OF THE ILLEGAL STOP MUST BE SUPPRESSED.
>
> A. The Investigatory Stop Occurred When the Officers Closed in on [Defendant], and Because There Was No Reasonable Suspicion for That Stop, It was Unlawful.
>
> B. The Fruits of the Illegal Stop Were Not Attenuated and Must Be Suppressed.
>
> C. Alternatively, Even if the Investigatory Stop Did Not Occur Until the Police Started Chasing

4

[Defendant], There Was No Reasonable Suspicion at That Point in Time, Warranting Suppression.

D. The Black Bag Was Not Abandoned and [Defendant] Has Standing to Challenge its Unlawful Seizure.

II.

We defer to a trial court's factual findings in a suppression hearing "when those findings are supported by sufficient credible evidence in the record." State v. A.M., 237 N.J. 384, 395 (2019) (quoting State v. S.S., 229 N.J. 360, 374 (2017)) (internal quotation marks omitted). The trial judge has the "'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Reece, 222 N.J. 154, 166 (2015) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)). "We ordinarily will not disturb the trial court's factual findings unless they are 'so clearly mistaken "that the interests of justice demand intervention and correction."'" State v. Goldsmith, 251 N.J. 384, 398 (2022) (quoting State v. Gamble, 218 N.J. 412, 425 (2014)). However, no deference is owed to the trial court's application of the law to the facts, which is reviewed de novo. State v. Fenimore, 261 N.J. 364, 373 (2025).

An investigative stop, also known as a <u>Terry</u>[1] stop-and-frisk, does not require probable cause to believe a person has committed or is about to commit an offense. <u>State v. Nishina</u>, 175 N.J. 502, 510 (2003). Rather, "[a] police officer may conduct an investigatory stop if, based on the totality of the circumstances, the officer ha[s] a reasonable and particularized suspicion to believe that an individual has just engaged in, or was about to engage in, criminal activity." <u>State v. Stovall</u>, 170 N.J. 346, 356 (2002) (citing <u>Terry</u>, 392 U.S. at 21).

"Although reasonable suspicion is a less demanding standard than probable cause, '[n]either "inarticulate hunches" nor an arresting officer's subjective good faith can justify infringement of a citizen's constitutionally guaranteed rights.'" <u>Goldsmith</u>, 251 N.J. at 399 (alteration in original) (quoting <u>Stovall</u>, 170 N.J. at 372 (Coleman, J., concurring in part and dissenting in part)). Rather, reasonable suspicion must arise from the totality of the circumstances "in view of [the] officer's experience and knowledge, taken together with rational inferences drawn from [the] facts." <u>State v. Davis</u>, 104 N.J. 490, 504 (1986).

---

[1] <u>Terry v. Ohio</u>, 392 U.S. 1, 21 (1968).

A-1036-24

With these governing standards in mind, we are satisfied the factual record supports the judge's determination the investigatory stop was based on reasonable suspicion. The judge found:

> [Officer] Sortino was justified in effectuating an investigative stop by pursuing defendant for several reasons. First, the observations he made of Walker and defendant supported a reasonable suspicion that defendant was engaged in street-level drug transactions. He observed Walker approaching vehicles, extending his body inside them, and then returning to defendant. Defendant was in possession of a black bag at the time. As Sortino walked toward defendant, he could hear the sound of what he believed to be plastic, CDS-packaging material coming together. See State v. Pineiro, 181 N.J. 13, 25 (2004) (the officer was aware that drugs sometimes are transported in cigarette packs and while that transfer may have been purely innocent, police may rely on behavior that is consistent with innocence as well as guilt in finding reasonable suspicion to conduct an investigatory stop). Finally, defendant fled the area on foot. The totality of these circumstances established a reasonable suspicion for the detention of defendant.

We are unpersuaded by defendant's contention the facts fell short of establishing reasonable suspicion. While Officer Sortino did not see money or CDS exchange hands, his observations of Walker's and defendant's interactions and behavior gave him cause to believe they were engaged in CDS distribution.

Because the stop was justified, we need not consider defendant's alternate arguments for suppression based on Wong Sun v. United States, 371 U.S. 471,

A-1036-24

487-88 (1963) (holding evidence seized as the result of an illegal stop must be suppressed as "fruit of the poisonous tree"). On that basis, we also reject defendant's contention the bag was discarded because of illegal police action and was therefore not abandoned under State v. Tucker, 136 N.J. 158, 170-72 (1994).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1036-24